IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DWIGHT PURK, | : | |
| Plaintiff, | : | Case No. 3:03CV00287 |
| vs. | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Sharon L. Ovington |
| UNITED STATES OF AMERICA, | : | |
| Internal Revenue Service, et al., | | |
| | : | |
| Defendants. | | |
| | : | |

**REPORT AND RECOMMENDATIONS[1]**

**I.     INTRODUCTION**

Plaintiff Dwight Purk brings this case *pro se* challenging the United States Internal Revenue Service's alleged improper filing of tax liens on his property in 1989 and 1991.[2] The details of Purk's allegations and claims have been previously reviewed and are incorporated herein by reference. (Doc. #10).

A prior Order in this case dismissed all but one of Purk's claims. *See* Doc. #s 10, 13. His sole remaining claim is that Defendants violated his constitutional right to due process by failing to provide him with the statutorily required notice of tax liens on his property for the tax

---

   [1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

   [2] Purk's wife, Felicidad Purk, was granted leave to intervene in this case due to her part interest in the property at issue. (Doc. #21, 26). This, however, has not resulted in joint filings by these two. Each has filed their own documents, *e.g.,* Doc. #s 27, 28, with Dwight Purk signing and filing many more documents  For the sake of simplicity, and unless otherwise indicated, this Report will only refer to Dwight Purk ("Purk") with the understanding that Felicidad Purk is also a party to this case.

years 1989 and 1991. *See* Doc. #10 at 8-11.

This case is before the Court upon Plaintiffs' Motions to Compel (Doc. #27, 28), the United States of America's ("the Government's") Memorandum in Opposition and Motion to Enforce United States District Judge Carl B. Rubin's Order (Doc. #29, 30), Plaintiffs' Objections and Replies in Support of their Motions to Compel and in Opposition to the Government's Motion to Enforce (Doc. # 31, 32), Purk's Notice of Freedom of Information Act request (Doc. #33), Purk's Notice concerning an October 4, 2004 letter he received from the Internal Revenue Service (Doc. #34), a document Purk styled "Leave of Court permission to Amend and Add to Rule 37(a) the Freedom of Information Request...." (Doc. #35), Purk's Motion for Extension of the Discovery Deadline (Doc. #36), a document Purk styled "Defendant's Response, January 4, 2005 to Plaintiff's Request under the Freedom of Information Act ... dated October 1, 2004." (Doc. #37), and Purk's Motion to Add United States Code Title 18 Crimes and Criminal Procedure Section 1623(a), 1621(2), and 28 U.S.C. Section 1746 (Doc. #38).

## II.   BACKGROUND

The Government's Motion to Enforce Judge Rubin's Order (Doc. #30) explains that since October 31, 1988, Purk has filed no fewer than thirty-one lawsuits raising various constitutional challenges to the Government's right to assess and collect taxes. (Doc. #30, Memorandum at 5). On March 7, 1991, Judge Rubin filed an Order permanently revoking Purk's *in forma pauperis* status concerning any pleading he seeks to file against the Government, the Internal Revenue Service, or any agent thereof, "dealing with actions which have been previously litigated...." (Doc. #30, Exhibit1 at 2). Judge Rubin's Order further mandated as follows:

> No pleading will be accepted, even with a tender of costs should there be

>       any outstanding monetary assessment against Mr. Purk either by reason of
>       violation of Rule 11, imposition of double costs by the United States Court of
>       Appeals for the Sixth Circuit or the imposition of any other costs by the United
>       States District Court for the Southern District of Ohio.

*Id*.

According to the Government, after Judge Rubin's Order, Purk continued to file many cases raising various constitutional challenges to the Government's right to assess and collect taxes against him. In support of its description of these cases, the Government has attached copies of the docket sheets in these cases, including docket sheets concerning cases Purk filed in, or appealed to, the United States Court of Appeals for the Sixth Circuit. *Id*. at Exhs. 2-13. A review of these docket sheets reveals that sanctions were imposed upon Purk in many of these cases. Two cases stand out. In one case, the Court of Appeals imposed a sanction of double costs upon Purk. *Id*. at Exh. 12. In the second case, the Court of Appeals dismissed Purk's appeal by Order on February 6, 1993 and granted the Government's motion for sanctions, explaining:

>       Defendant's motion for sanctions of $4000 pursuant to 28 U.S.C. §1912
>       and Fed. R. App. P. 38 will be granted.... Purk has previously been assessed
>       double costs in more than one of his appeals, but this has apparently not deterred
>       him from filing frivolous appeals. This court has also noted that Purk's
>       demonstrated history of frivolous litigation and cautioned him that further
>       sanctions might be imposed in prior orders. Defendant's motion indicates that
>       $4,000 is less than the average amount expended by it in defending frivolous
>       lawsuits.

*Id*. at Exh. 14 (*Purk v. United States of America*, 56 Fed. Appx. 698, 699 (6th Cir. 2003)).

In a nonsequitur response to the Court of Appeals' sanction, Purk filed a motion in the United States District Court on October 29, 2003 seeking to re-open one of his previously closed cases, *Purk v. United States of America*, *et al*., Case No. 3:88CV00516, and further seeking an

3

Order removing the $4,000.00 sanction imposed upon him by the Court of Appeals. *Id*. At Exh. #9 (motion attached). This Motion was rejected. *Id*.

### III. ANALYSIS

The Government contends that dismissal of the instant case is warranted pursuant to Judge Rubin's Order due to Purk's history of repetitive filing of frivolous and meritless cases. The Government also asserts that Purk has not paid the Court of Appeals' sanction. Purk opposes the Government's Motion – not by alleging or attempting to show that he has paid the Court of Appeals' $4,000.00 sanction – but by stating, "assessment statute expired on 11-23-1987 on 10-24-1988 through 6-21-1991 the defendants United States illegally seized Plaintiff's property...." (Doc. #31 at 4).

Judge Rubin's Order remains in effect in this Court. Purk has not demonstrated, much less indicated, that he has satisfied the $4,000.00 sanction imposed upon him by the Court of Appeals in 2003. His response to the Government's Motion on this point merely alleges in a conclusory manner that an assessment statute is no longer in effect and that the Government illegally seized his property from October 1988 through June 1991. This, however, fails to show that he has met his affirmative obligation to satisfy the Court of Appeals' sanction. As a result, Purk has not satisfied one of the main conditions established by Judge Rubin's Order – that he satisfy all his sanctions, including those imposed by the Court of Appeals, before filing any pleadings in this Court.

Purk has thusfar avoided the effect of Judge Rubin's Order in the instant case primarily because the extent of his prior frivolous filings did not become clear in the record of this case until Government filed its Motion to Enforce Judge Rubin's Order. The record now contains a

sufficiently detailed explanation of these cases, which the Government has supported with documentary evidence. (Doc. #30 and attached Exhs). Although Purk certainly opposes enforcement of Judge Rubin's Order in this case and further opposes dismissal of this case, he has not demonstrated any inaccuracy in the Government's description of his prior thirty-one cases as frivolous or lacking merit. He, moreover, has merely presented conclusory and repetitive statements concerning the Government's purported violations of numerous statutes. *See* Doc. #s 31-38. Such statements provide an insufficient basis for setting aside or ignoring Judge Rubin's Order. And, given Purk's consistent record of filing frivolous and meritless cases against the Government in this Court and in the Court of Appeals, the continued need for enforcement of Judge Rubin's Order is beyond question.

In addition, although Judge Rubin's Order was filed more than ten years ago, it remains legally valid in light of case law concerning frivolous litigation and pre-filing injunctions. "Frivolous, vexatious, and repeated filings by *pro se* litigants interfere with the orderly administration of justice by diverting scarce judicial resources from cases having merit...." *United States v. Circuit Court for Taylor County*, 73 F.3d 669, 671 (7th Cir.1995). Thus, "[t]here is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation." *Feathers v. Chevron U.S.A., Inc.,* 141 F.3d 264, 269 (6th Cir. 1998)(citing *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987)). Such restrictions are based on the federal judiciary's inherent power to control its docket and can include imposition of a prefiling injunction or sanctions, such as requiring the abusive litigant to pay the opposing party's attorney fees. *See Feathers*, 141 F.3d 264, 269 (6th Cir. 1998)(and numerous injunction cases cited therein); *see also Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996)(requiring the plaintiff

5

to pay $24,809.99 in attorney fees); *Cauthon v. Rogers*, 116 F.3d 1334, 1337 (10th Cir. 1997); *Circuit Court for Taylor County*, 73 F.3d at 670; *Martin-Trigona v. Shaw*, 986 F.2d 1384, 1386-87 (11th Cir. 1993)("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." (citation omitted)).

In deciding whether and what prefiling sanctions are warranted, the Court is guided by its duty "to protect and preserve the sound and orderly administration of justice." *Circuit Court for Taylor County*, 73 F.3d at 671 (quoting *In re Martin-Trigona*, 737 F.2d 1254, 1262 (2nd Cir. 1984))(numerous other citations omitted). Prefiling sanctions may rarely – if ever – completely bar a potential plaintiff from filing future litigation, "though it is permissible to require one who has abused the legal process to make a showing that a tendered lawsuit is not frivolous or vexatious before permitting it to be filed." *Ortman*, 99 F.3d at 811. Judge Rubin recognized this in his Order by stating, "The right of litigants to apply to United States Courts for redress must never be foreclosed." (Doc. #30, Exh. 1 at 1). Judge Rubin, however, also recognized the limited nature of that right when an individual repeatedly files frivolous cases. In Judge Rubin's words, "That right, however, does not extend to repeated attempts to relitigate the same question nor to ignore decisions by the District and the Circuit Court of Appeals...." *Id*.

Given Purk's penchant for pursuing repetitive, meritless litigation against the Government and the Internal Revenue Service, and given his claims in this case – which are more than reminiscent of his prior cases, *see* Doc. #30 at 1-5 and attached Exhibits – it is likely that Purk will continue to attempt to re-litigate his claims concerning the Internal Revenue Service's constitutional and statutory authority to assess and collect his unpaid taxes. Neither

Judge Rubin's Order nor the Court of Appeals' sanctions have dissuaded Purk from filing such cases, presently massing to a total of thirty-one cases. It is therefore likely that Purk will file similar future repetitive cases thereby interfering with the orderly administration of justice by diverting scarce judicial resources from cases having merit. *Cf. In re McDonald*, 489 U.S. 180, 184 (1989)("Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice.").

  Lastly, enforcement of Judge Rubin's Order and dismissal of Purk's case are warranted despite the Court's prior denial of the Government's Alternative Motion for Summary Judgment. The Court denied that Motion, not because Purk's remaining due process claim had merit, but because the Government had not demonstrated that it was entitled to summary judgment as a matter of law. *See* Doc. # 10 at 8-11. However, at that time, the Government did not attempt to show that dismissal of the case was warranted due to Judge Rubin's Order and due to Purk's failure to pay a currently pending sanction in the Court of Appeals. *See* Doc. #6. Such showing was especially needed in this case because Purk's Complaint did not trigger the pre-service screening applicable to *pro se* complaints pursuant to 28 U.S.C. §1915. Purk avoided this screening by paying the Court's initial filing fee and by quickly effecting service of summons and process on the Government. *See* Doc. #s 1-4. The Government's Motion to Dismiss soon followed. The Court thereafter focused on the parties' contentions concerning the Government's Motion. This had the effect of allowing Purk to proceed without the screening required under 28 U.S.C. §1915(e). Meanwhile, and perhaps more significantly, Purk was able to litigate this case

without informing the Court of either his knowledge of Judge Rubin's Order – which plainly contained a prefiling injunction – or his knowledge of his duty and failure to pay the $4,000.00 sanction mandated by the Court of Appeals, thereby placing in doubt his good faith in bringing this case.

Accordingly, for all the above reasons, the Government's Motion to Enforce is well taken. Pursuant to Judge Rubin's Order, the Complaint should be dismissed due to the continued validity of Judge Rubin's Order and due to Purk's failure to satisfy the Court of Appeals' $4,000.00 sanction.

### IT IS THEREFORE RECOMMENDED THAT:

1. The United States of America's Motion to Enforce Judge Carl B. Rubin's Order (Doc. #30) be GRANTED;

2. Plaintiffs' Motions to Compel (Doc. #27, 28) be DENIED;

3. Purk's remaining Requests and Motions (Doc. #33, 34, 35, 36, 37, 38) be DENIED;

4. The Complaint be DISMISSED; and

5. The case be terminated on the docket of this Court.

February 4, 2005

    s/ Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).